UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

August 20, 2019

LETTER TO COUNSEL

> RE: *Jaclyn D. v. Commissioner, Social Security Administration*;
> Civil No. SAG-18-2041

Dear Counsel:

On July 6, 2018, Plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for disability benefits. ECF 1. I have considered the parties' cross-motions for summary judgment, and Plaintiff's Reply. ECF 14, 17, 20. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's motion, and affirm the SSA's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff protectively filed her claims for disability benefits on August 5, 2013, alleging a disability onset date of January 28, 2013. Tr. 321-28. Her claims were denied initially and on reconsideration. Tr. 155-59, 162-65. A hearing was held on September 14, 2016, before an Administrative Law Judge ("ALJ"). Tr. 37-109. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 13-26. The Appeals Council ("AC") denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found that, during the relevant time frame, Plaintiff suffered from the severe impairments of:

> depression; mood disorder; history of bipolar affective disorder; post-traumatic stress disorder (PTSD); cluster B personality traits; borderline personality disorder by history; narcissistic and histrionic traits; claimant-perceived adrenal insufficiency of unknown etiology; fibromyalgia by history; chronic fatigue syndrome by history; claimant-perceived celiac disease; possible "leaky gut" syndrome; history of gastritis and gastroduodenitis; irritable bowel syndrome (IBS); possible endocrine disorder; history of chronic candidiasis; and thyroid disorder by history.

Tr. 15. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except unskilled work; no more than occasional interaction with co-workers, supervisors, and the general public; no more than frequent exposure to atmospheric irritants, such as dust, fumes, odors, and gases; no more than frequent exposure to temperature extremes, wetness, high humidity, exposed heights, and moving machinery.

Tr. 17-18. After considering the testimony of a vocational expert ("VE"), the ALJ determined that, during the relevant period, Plaintiff could not perform past relevant work, but could perform other jobs existing in significant numbers in the national economy. Tr. 24-26. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 26.

In support of her appeal, Plaintiff advances several general arguments with a great number of subparts: (1) that the ALJ erred at step two by declining to find multiple impairments to be severe, ECF 14-1 at 10-11; (2) that the ALJ erred in evaluating the listings, ECF 14-1 at 11-17; (3) that the ALJ erred in discounting Plaintiff's subjective assertions of disabling symptoms, ECF 14-1 at 17-26; (4) that the ALJ failed to conduct a function-by-function analysis, ECF 14-1 at 27-28; (5) that the ALJ erred in evaluating the medical opinions and other evidence, ECF 14-1 at 28-31; and (6) that the ALJ erred in evaluating the VE evidence, ECF 14-1 at 33-35. Each argument lacks merit for the reasons discussed below.

First, Plaintiff asserts that the ALJ should have found additional impairments to be "severe." ECF 14-1 at 10-11. An impairment is considered "severe" if it significantly limits the claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1522; 416.922. The claimant bears the burden of proving that an impairment is severe. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). Here, the ALJ adequately considered the relevant impairments at step two. Tr. 15-16. The ALJ found roughly a dozen impairments to be nonsevere, because they were "stable with medication or do not require ongoing treatment." Tr. 16. Plaintiff disagrees with the ALJ's finding that her allergic rhinitis, sinusitis, and fecal incontinence were nonsevere. The records that Plaintiff cites do little to nothing to support her position. The only substantive mention of fecal incontinence in the records that Plaintiff cites to is a single notation that she reported "alternating constipation and diarrhea with an episode of nocturnal fecal incontinence." Tr. 997. While Plaintiff's rhinitis and sinusitis are mentioned more than a single time, the Court has not found anything in the records that allow Plaintiff to meet her burden that those impairments caused a significant limitation in her ability to perform work activities. Plaintiff cites to her testimony that she had to move out of an apartment, because it smelled of smoke and would "ignite all my candida symptoms." Tr. 68-69. Plaintiff has not offered evidence that her rhinitis and sinusitis were involved in this incident. Furthermore, because Plaintiff made the threshold showing that her other impairments were severe, the ALJ continued with the sequential evaluation process and properly considered all impairments, both severe and nonsevere, that significantly impacted Plaintiff's ability to work. *See* 20 C.F.R. §§ 404.1523, 416.923. Plaintiff has not offered evidence

demonstrating that she required greater restrictions than the limitations the ALJ included in the RFC. Accordingly, even if the ALJ's failure to find her rhinitis, sinusitis, or fecal incontinence severe was error at all, it would be harmless.

Second, Plaintiff asserts that the ALJ should have found her to meet the criteria of multiple listings, including 5.08, 14.10, 12.04 and 12.06. ECF 14-1 at 11-17. The ALJ explained that Plaintiff did not meet Listing 5.08's requirement of documentation of body mass index ("BMI") measurements of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period. Tr. 16; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 5.08. The records that Plaintiff cites to refute that finding are from an October 11, 2013 examination, with attached laboratory results, Tr. 949-954, and a January 4, 2015 record of a phone appointment, Tr. 1087-1088. EFC 14-1 at 11. Those dates are not within a consecutive 6-month period. Plaintiff does not provide any legal authority for her apparent contention that a "denial must be vacated and awarded as a matter of law" when an ALJ cites to only some, but not all, exhibits identified in a representative's pre-hearing and post-hearing briefs. *Id.* (emphasis removed).

Next, Plaintiff contends that the ALJ erred by finding that Plaintiff did not meet Listing 14.10, for Sjoegren's/Sjogren's syndrome,[1] because "she has not been diagnosed with Sjogren's syndrome." Tr. 16. Plaintiff contends the ALJ should have found Plaintiff's impairments to medically equal the listing.[2] Under the regulations, the SSA may determine medical equivalence to a listing under three scenarios: (1) if a claimant has an impairment described in a listing but does not have all of the required findings or required severity of the findings; (2) if a claimant has an impairment not described in the listings, the SSA compares the findings with those for closely analogous listed impairments; or (3) if a claimant has a combination of impairments, no one of which meets a listing, the SSA will compare the findings with those for closely analogous listed impairments. 20 C.F.R. §§ 404.1526(b), 416.926(b). Plaintiff has not argued that she has Sjoegren's syndrome, that she has an impairment not described in the listings that is closely analogous to Sjoegren's syndrome, or that Sjoegren's syndrome is a closely analogous impairment to the combination of impairments she does have. Accordingly, there is no basis for remand on this issue.

Plaintiff's final listing argument is that the ALJ erred in his assessment of the paragraph B criteria for Listings 12.04 and 12.06. The ALJ found that Plaintiff had no limitation in the functional area of understanding, remembering, or applying information, and moderate limitation in each of the three other functional areas. Tr. 17. Plaintiff argues the ALJ reached his findings

---

[1] The listings describe Sjoegren's syndrome as "an immune-mediated disorder of the exocrine glands. Involvement of the lacrimal and salivary glands is the hallmark feature, resulting in symptoms of dry eyes and dry mouth, and possible complications, such as corneal damage, blepharitis (eyelid inflammation), dysphagia (difficulty in swallowing), dental caries, and the inability to speak for extended periods of time. Involvement of the exocrine glands of the upper airways may result in persistent dry cough." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00(D)(7)(a)(i).

[2] Plaintiff argues for "functional equivalence," ECF 14-1 at 12, which is a term specific to Children's Supplementary Security Income cases. *See* 20 C.F.R. § 416.926a.

"without even making specific references to any substantial evidence in the record," but then acknowledges that the ALJ cited notes from a consultative psychological examination, a function report by Plaintiff, and Plaintiff's testimony. ECF 14-1 at 14; Tr. 17. Plaintiff claims that the ALJ cited "inaccurate" records showing intact memory, without clearly explaining how they were inaccurate. ECF 14 at 15 (emphasis removed). Further, Plaintiff represents that she has had "various hospitalizations for suicidal ideations."[3] ECF 20 at 5. The records that Plaintiff cites do not provide any direct support for that contention. The only hospital records included in the records Plaintiff cites are for an overdose of heroin in 2011, and 2013 hospitalization for dizziness and headaches. Tr. 528, 613. The ALJ's analysis of the paragraph B criteria, which was supported by the evidence cited by the ALJ, was also consistent with the ALJ's more detailed discussion of Plaintiff's mental health treatment during the RFC portion of the decision. *See* Tr. 21-24. Accordingly, Plaintiff's argument regarding the paragraph B criteria is without merit.

Third, Plaintiff asserts that the ALJ relied only on a lack of objective medical evidence to discredit her subjective complaints of disabling symptoms. ECF 14-1 at 17-26. It would be difficult to summarize the various subparts of this portion of Plaintiff's argument. However, as Plaintiff seemingly concedes, the ALJ's analysis was not based solely on the lack of objective medical findings, but also relied upon Plaintiff's own reports of her activities to contradict her alleged symptoms. Tr. 23 (noting that Plaintiff's testimony that she was able to drive a car shows concentration, persistence, and pace); Tr. 23 (noting that Plaintiff was able to travel to Florida to visit family); Tr. 23 (noting Plaintiff's testimony that she does not use a cane, but rather "randomly" uses a pole that she found around her house). Thus, the ALJ appropriately considered Plaintiff's subjective statements, in addition to the objective results from her medical examinations, to determine her functional capabilities. Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find the ALJ's evaluation of Plaintiff's subjective complaints was supported by substantial evidence.

Fourth, Plaintiff posits that the ALJ's RFC determination did not include an appropriate function-by-function analysis. ECF 14-1 at 27-28. Plaintiff argues the analysis did not comply with *Mascio v. Colvin*, 780 F.3d 632, and generally argues that the ALJ should have imposed greater non-exertional limitations in the RFC. ECF 14-1 at 27-28. However, the ALJ's analysis of the medical evidence is detailed, clear, and well-supported by citations to the record. Regarding Plaintiff's limitations in concentration, persistence, and pace, although the ALJ found Plaintiff to have a moderate limitation in that area in the step-three analysis, Tr. 17, the ALJ explained that no

---

[3] Plaintiff states the hospitalizations occurred "as noted above," ECF 20 at 5, however, that mention is the first in Plaintiff's brief of any such hospitalizations. Plaintiff's reply brief, ECF 20, is referenced here, because the citations to the record are more precise than the citations in her original motion for summary judgment, *see* ECF 14-1 at 13.

corresponding RFC limitations were necessary, as evidenced by Plaintiff's ability to drive, her ability to travel, and her attentiveness and responsiveness at the hearing, Tr. 23. Regarding environmental limitations, the ALJ imposed greater limitations than those offered by the State agency medical consultant, *see* Tr. 149-50, and Plaintiff's arguments do not undermine the substantial evidence upon which the ALJ based his findings.

Fifth, Plaintiff also contends that the ALJ assigned insufficient weight to opinions and GAF scores from her various treating physicians, as well as the testimony of her grandmother and a letter from a former employer. ECF 14-1 at 28-31. The ALJ assigned "no weight" to the opinion of one of Plaintiff's treating endocrinologists, Dr. Vilcu, who opined that he did "not see this lady performing in any job due to non-endocrine symptoms: GI, depression, etc." Tr. 24. The ALJ explained that, "Although he is a specialist, Dr. Vilcu does not treat the claimant's reported GI or mental health impairments, the basis for which he found the claimant unable to work." Tr. 24. The ALJ also assigned "no weight" to the opinion of Dr. Weiss that Plaintiff suffered "temporary incapacity from February 1, 2013 through February 1, 2014 based on diagnoses of anxiety, hypothyroidism and hypoadrenalism." Tr. 24. The ALJ explained that the finding of temporary incapacity "is a finding reserved to the Commissioner. Further, the evaluation performed at Johns Hopkins Medicine in April 2013 found no evidence of any underlying endocrine abnormalities and normal adrenal function." Tr. 24. The ALJ also assigned "little weight" to the GAF scores in the record, because "[t]hese scores are highly subjective ratings that can easily vary from one practitioner to the next and generally represent only a snapshot of the presentation of information available from a claimant on the day of assessment." Tr. 24.

Regarding the testimony of Plaintiff's grandmother, the ALJ summarized the testimony, Tr. 23, but did not make any specific assignment of weight. However, Plaintiff has not provided the Court with any legal authority that the ALJ was required to do so. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("[W]e will evaluate every medical opinion we receive."). While an ALJ is required to consider all of a claimant's medical conditions, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Even if it was error for the ALJ to not assign a specific weight to the testimony of Plaintiff's grandmother, or to discuss the letter from Plaintiff's former employer, the ALJ provided substantial evidence to support his findings, including the consideration of the medical opinions, and Plaintiff has not sufficiently argued a basis for disturbing the findings of the ALJ.

Sixth, as to the alleged errors concerning the VE testimony, Plaintiff contends that as a result of a faulty hypothetical, the VE testimony did not constitute substantial evidence upon which the ALJ could base a conclusion. ECF 14-1 at 33-35. Plaintiff contends that the ALJ improperly adopted the first hypothetical RFC posed, instead of later hypotheticals posed by the ALJ. *Id.* The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *5 (4th Cir. 1999) (unpublished table decision), and need only pose those that are based on substantial evidence and accurately reflect a claimant's limitations, *see Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). The ALJ's first hypothetical question to the VE, which accurately incorporated the RFC assessment, were permissible without including any

additional limitations that the ALJ did not deem valid. Essentially, this argument reiterates Plaintiff's contentions regarding the adequacy of the RFC. Because the ALJ's RFC assessment was adequate for the reasons discussed herein, the hypotheticals setting forth that RFC assessment were equally valid.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF 14, is DENIED, and Defendant's Motion for Summary Judgment, ECF 17, is GRANTED. The SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge